IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KRISTOPHER STEPPS**                                                            **PLAINTIFF**

v.                                **Case No.: 4:21-cv-00986-LPR**

**THE BOARD OF TRUSTEES**
**OF THE UNIVERSITY OF ARKANSAS**
**and THOMAS SCHULZ**
**(in his individual and official capacities)**                        **DEFENDANTS**

## ORDER

Dr. Kristopher Stepps brings this suit against the Board of Trustees of the University of Arkansas and Thomas Schulz. Dr. Stepps alleges that Defendants violated 42 U.S.C. § 1981's prohibitions against racial discrimination and retaliation. Pending before the Court is Defendants' Motion to Dismiss.[1]

For the reasons discussed below, the Motion is GRANTED in part and DENIED in part. All of Dr. Stepps's claims have serious deficiencies. These deficiencies are addressed in this Order. Dr. Stepps will have twenty-one days from the date of this Order to remedy the deficiencies. If Dr. Stepps does not timely amend, or if the amendments do not remedy the deficiencies, then the case will be dismissed.

---

[1] Defs.' Mot. to Dismiss (Doc. 16). This is the second Motion to Dismiss filed in this case. The first Motion to Dismiss, Doc. 7, was filed before Dr. Stepps amended his Complaint. The Court's understanding is that, because of the amendments to the Complaint and the second Motion to Dismiss, Doc. 16, the first Motion to Dismiss, Doc. 7, is now moot. The Court emailed counsel for both parties on May 12, 2022, to confirm this understanding. Specifically, the Court said that "if either party disagree[d] with the Court's understanding on this point, that party" had a week to "notify the Court . . . ." Neither side's counsel responded. Accordingly, the Court finds that the first Motion to Dismiss, Doc. 7, is moot.

## BACKGROUND[2]

Dr. Stepps was employed as a medical resident in the University of Arkansas's Internal Medicine Residency program from July of 2016 until his termination in July of 2018.[3] Dr. Stepps was one of nine total residents in the program and was one of two Black residents.[4] Dr. Stepps describes the residency program as a "learning environment" where "mistakes occurred among all of the residents."[5] As a general matter, while everyone made mistakes, not everyone's mistakes were handled the same way. According to Dr. Stepps, when non-Black residents made mistakes, they "were encouraged . . . to learn and to increase their knowledge and their level of competency over time."[6] But when Dr. Stepps made mistakes, he was "humiliate[d] in the presence of his colleagues."[7]

Dr. Stepps's allegations of discrimination mostly involve an attending physician named Dr. Clark. Allegedly, Dr. Clark "subjected [Dr. Stepps] to" "hyper scrutiny and criticism" "on an ongoing basis."[8] In addition to this general allegation, Dr. Stepps adverts to one specific incident between himself and Dr. Clark, which occurred in February of 2017.[9] As to that incident, Dr. Stepps alleges that he "had a disagreement with the [a]ttending [physician], Dr. Clark, regarding

---

[2] All facts in this Background Section are taken from Dr. Stepps's First Amended Complaint. Given that we are at the motion-to-dismiss stage, all facts pled in the operative Complaint are taken as true for purposes of this Order.

[3] Pl.'s First Am. Compl. (Doc. 10) ¶¶ 5, 21.

[4] *Id.* ¶¶ 6, 9 ("There were eight residents who started the residency program with the Plaintiff. Only one of them was African American."). Dr. Stepps's Response to the Motion to Dismiss contravenes this allegation, stating: "The Plaintiff was the only African American enrolled in the Internal Medicine Residency Program." Pl.'s Resp. to Defs.' Mot. to Dismiss. At this stage of the litigation, the factual allegation made in the Amended Complaint controls.

[5] Pl.'s First Am. Compl. (Doc. 10) ¶ 26.

[6] *Id.*

[7] *Id.*

[8] *Id.* ¶ 15.

[9] *Id.* ¶ 12.

[Dr. Stepps's] performance . . . ."[10]  Dr. Stepps does not offer much detail about the disagreement, but the implication is that Dr. Clark unfairly criticized Dr. Stepps's job performance.[11]  Dr. Stepps alleges that there was "a complete lack of objective standards" by which his performance was assessed.[12]  Indeed, Dr. Stepps held and holds "a good faith belief that he was being subjected to unlawful discrimination because of his race."[13]

Following the disagreement with Dr. Clark in February of 2017, Dr. Stepps raised his concerns of racial discrimination to the Program Director, Dr. Schulz (a white male).[14]  After Dr. Stepps raised his concerns to Dr. Schulz, "the hospital's administration directed [Dr. Stepps] to file a complaint with the Civil Rights Office in Little Rock, Arkansas."[15]  Dr. Stepps filed a formal complaint.[16]  Little or no investigation followed, but someone informed Dr. Stepps that he needed to attend "counseling through EAP."[17]

In April of 2017, Dr. Stepps was placed on "remediation."[18]  Dr. Stepps does not say whose decision it was to place him on remediation.  Dr. Stepps alleges that the decision "was directly

---

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 13.

[14] *Id.* ¶¶ 7, 13.

[15] *Id.* ¶ 13.  Dr. Stepps does not specify who directed him to file a complaint with the Civil Rights Office.  In another part of the Amended Complaint, he says the "Hospital Director" told him to go to the Civil Rights Office.  *Id.* ¶ 43.  It is not clear whether the Hospital Director is the Program Director (i.e., Dr. Schulz) or if the Hospital Director is a different person.  Dr. Stepps also does not say how much time passed from when he raised concerns of discrimination to when he was told to file a complaint with the Civil Rights Office.  Dr. Stepps likewise does not provide any reason to think that being told to file a complaint with the Civil Rights Office is itself discriminatory or otherwise unusual.

[16] *Id.* ¶ 30.

[17] *Id.* ¶ 14.  Dr. Stepps does not say who told him he needed to go to counseling, nor does he explain what "EAP" counseling entails.  Dr. Stepps also does not say whether he actually attended or completed the EAP counseling.

[18] *Id.* ¶ 15.

3

linked to" Dr. Clark's "false comments," "hyper scrutiny[,] and criticism."[19] In any event, Dr. Stepps completed the remediation and advanced to the second level of the residency program.[20]

Dr. Stepps generally alleges that, during the second level of the residency program, he experienced "further difficulties[,] which led to him being placed on a . . . Performance Improvement Plan" in July of 2017.[21] The only specific "difficult[y]" that Dr. Stepps discusses in the Amended Complaint was "encounter[ing] an attending physician [who] criticized [Dr. Stepps's] performance."[22] It is unclear whether this unnamed attending physician is Dr. Clark or some other physician. Dr. Stepps says that, aside from the criticism of his performance, this attending physician would "never [give Dr. Stepps] input when he was working with him."[23]

In September of 2017, an unnamed attending physician accused Dr. Stepps of improperly altering the file of a patient.[24] This patient was not being treated by Dr. Stepps.[25] It is unclear whether the unnamed attending physician was Dr. Clark, the unnamed attending physician who criticized Dr. Stepps in July of 2017, or some other attending physician. In any event, Dr. Stepps was told to stay home and study while the accusation was investigated.[26] The results of the investigation were inconclusive.[27] Dr. Stepps maintains that he was falsely accused.[28]

---

[19] *Id.*

[20] *Id.* ¶ 16.

[21] *Id.* ¶ 18.

[22] *Id.* ¶ 17.

[23] *Id.*

[24] *Id.* ¶ 19.

[25] It is unclear which physician was treating the patient.

[26] *Id.*

[27] *Id.*

[28] *Id.*

In December of 2017, Dr. Schulz (the Program Director) informed Dr. Stepps that the University did not intend to renew Dr. Stepps's employment contract.[29] Dr. Stepps's employment as a medical resident in the University of Arkansas's Internal Medicine Residency program came to an end when his contract expired in July of 2018.[30]

## DISCUSSION

Counts I and II of the Amended Complaint allege that the Board of Trustees discriminated and retaliated against Dr. Stepps in violation of 42 U.S.C. § 1981. Counts III and IV of the Amended Complaint make the same allegations against Dr. Schulz in both his official and individual capacities. Plaintiff seeks "compensatory damages as well as all equitable relief available under the law," including "reinstatement into the residency program, back pay with interest, reasonable attorney fees, compensation for emotional pain and mental anguish, compensation for the loss of past and future enjoyment of life, appropriate expungement of his resident file and all other equitable relief that the Court may deem appropriate."[31]

### I. Claims Against the Board of Trustees

Defendants argue that the Eleventh Amendment to the United States Constitution prevents Dr. Stepps from suing the Board of Trustees in federal court. Defendants are correct.[32] The immunity encompassed by the Eleventh Amendment bars this Court from exercising jurisdiction over claims against the State of Arkansas (or its instrumentalities, such as the board of trustees of a state university) regardless of whether such claims are legal or equitable in nature.[33] A plaintiff

---

[29] *Id.* ¶ 10.

[30] *Id.* ¶ 21.

[31] *Id.* at 7.

[32] *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).

[33] *See Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017); *see also Liang v. Rahn*, No. 4:17-CV-00135, 2017 WL 3205543, at *3 (E.D. Ark. July 27, 2017) ("The Board

may sue a state directly only in one of two circumstances. First, a state may waive its immunity, thereby consenting to being sued in federal court.[34] Second, Congress may abrogate this immunity through legislation.[35] Arkansas has not consented to this suit, nor has Congress abrogated Arkansas's immunity by way of § 1981.[36] Therefore, the Court has no authority to adjudicate Dr. Stepps's claims against the Board of Trustees. Those claims must be dismissed.

## II. Claims Against Dr. Schulz in His Official Capacity

Notwithstanding the discussion in Section I, a plaintiff may obtain relief for ongoing deprivations of federal rights by suing an officer or employee of the state in his or her official capacity.[37] This exception to Eleventh Amendment immunity was set out in *Ex parte Young*. While *Ex parte Young* permits plaintiffs to sue state officials even in the absence of state consent or federal abrogation, the exception only applies to claims for prospective injunctive relief.[38] Therefore, Dr. Stepps's claims against Dr. Schulz in his official capacity may only proceed if Dr. Stepps seeks prospective injunctive relief.

Much of the relief that Dr. Stepps seeks does not qualify as prospective injunctive relief—for example, compensatory damages, back-pay, and other backward-looking, punishment-inflicting remedies.[39] Some of the relief Dr. Stepps seeks, however, counts as prospective injunctive relief. Specifically, reinstatement into the residency program and expungement of Dr.

---

of Trustees (i.e., the University of Arkansas) is an instrumentality of the [S]tate of Arkansas, and thus enjoys the state's sovereign immunity.").

[34] *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985).

[35] *Id*.

[36] *See Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005). Section 1983 does not abrogate State immunity, either. *See, e.g.*, *Quern v. Jordan*, 440 U.S. 332, 342 (1979).

[37] *See Ex parte Young*, 209 U.S. 123 (1908).

[38] *Id.*

[39] *Edelman v. Jordan*, 415 U.S. 651, 667–69 (1974); *Campbell v. Ark. Dep't of Corr.*, 155 F.3d 950, 962 (8th Cir. 1998).

Stepps's resident file are both forms of prospective injunctive relief. But—and this is a big but—Dr. Stepps lacks standing to pursue reinstatement and expungement of his resident file.[40]

In order to have standing in federal court, a plaintiff must allege a concrete and particularized injury-in-fact that is (1) actual or imminent, (2) fairly traceable to the defendant's wrongful conduct, and (3) redressable by a favorable judicial decision.[41] Past exposure to illegal conduct cannot confer standing to seek injunctive relief where a plaintiff does not continue to suffer adverse effects.[42] And Dr. Stepps does not allege any ongoing or imminent injuries that would be redressed by prospective injunctive relief. He does not claim, for example, that his separation from the residency program now prevents him from completing educational requirements or securing employment as a physician. Nor does he allege that the contents of his resident file are the source of any current or future injury to his career prospects. In short, Dr. Stepps fails to connect either of the permissible official-capacity remedies (reinstatement or alteration of his resident file) to any ongoing or future harm. So, for purposes of the official-capacity claims against Dr. Schulz, there is no injury that is redressable by the Court. Dr. Stepps therefore lacks standing to pursue these claims, and the Court does not have jurisdiction to hear them.

---

[40] In their Brief in Support of the Motion to Dismiss, Defendants make a factual attack on Dr. Stepps's standing, relying heavily on facts outside the Amended Complaint. Defendants have not submitted affidavits or declarations, requested an evidentiary hearing, or otherwise properly admitted this evidence. Therefore, the Court does not consider this evidence at the motion-to-dismiss stage. *See Osborne v. United States*, 918 F.2d 724, 729–30 (8th Cir. 1990). However, Dr. Stepps's standing is subject to a facial attack that the Court can resolve based solely on the face of the pleadings. *See id.* at 729 n.6.

[41] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[42] *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998).

### III. Claims Against Dr. Schulz in His Individual Capacity

Defendants argue that Dr. Schulz is entitled to qualified immunity from the claims against him in his individual capacity.[43] "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[44] Defendants essentially concede that Dr. Stepps invokes a clearly established statutory right "to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."[45] This clearly established right certainly would have been violated if Dr. Stepps's contract was not renewed as a result of racial discrimination or retaliation. The question, then, boils down to whether the Amended Complaint states a viable claim for either racial discrimination or retaliation.

To avoid dismissal, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[46] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[47] Factual allegations are taken to be true at the motion-to-dismiss stage because the plaintiff has not had a full opportunity to conduct discovery and thereby uncover facts that support his or her claim."[48] But a court does not need to accept a

---

[43] Defs.' Mot. to Dismiss (Doc. 16).

[44] *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[45] 42 U.S.C. § 1981. Defendants concede this point by failing to argue it. *See* Defs.' Br. in Supp. of Mot. to Dismiss (Doc. 17) at 7–8 (arguing only that Dr. Stepps has failed to allege that racial discrimination or retaliation occurred).

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

[47] *Id.*

[48] *Ashley v. U.S. Dep't of Interior*, 408 F.3d 997, 1000 (8th Cir. 2005).

plaintiff's "conclusory statements" or "naked assertion[s] devoid of further factual enhancement."[49]

### A. Discrimination

The elements of a § 1981 discrimination claim are: (1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant.[50]  A § 1981 plaintiff "must initially plead . . . that, but for race, [he] would not have suffered the loss of a legally protected right."[51]  In its current form, the Amended Complaint lacks sufficient facts to plausibly allege discriminatory intent on the part of Dr. Schulz.

The closest the Amended Complaint gets to sufficiently pleading racial discrimination is where it juxtaposes the alleged treatment Dr. Stepps faced when he made mistakes with the treatment that non-Black residents received in light of their mistakes.  According to the Amended Complaint, while the other residents were "encouraged and permitted to learn and to increase their knowledge and their level of competency over time[,]" Dr. Stepps's mistakes were allegedly "used as a basis to humiliate him in the presence of his colleagues and . . . as a justification to terminate him."[52]  The problem for Dr. Stepps is the general, vague, and conclusory nature of these allegations.

---

[49] *Retro Television Network, Inc. v. Luken Commc'ns*, 696 F.3d 766, 768 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

[50] *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 469 (8th Cir. 2009).  Defendants' reliance on *McDonnell Douglas* to argue that Dr. Stepps must establish a prima facie case in order to survive a motion to dismiss is mistaken.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (stating that the *McDonnell Douglas* framework is an evidentiary standard, not a pleading requirement).

[51] *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

[52] Pl.'s First Am. Compl. (Doc. 10) ¶ 40.

The Amended Complaint does not contain sufficient facts to make it plausible that Dr. Stepps's race motivated the treatment he allegedly received. Dr. Stepps does not allege that his mistakes were similar in kind or number to the mistakes of his peers. The Amended Complaint does not point to or describe any specific occurrences of Dr. Stepps being humiliated in the presence of his colleagues. It does not indicate who allegedly humiliated him, what form the alleged humiliation took, or when such alleged humiliation occurred.

Dr. Stepps does generally allege that he received negative treatment from attending physicians, such as Dr. Clark. But the Amended Complaint provides nothing to tie this treatment to his race. The first allegation of discrimination in the Amended Complaint appears in connection with the disagreement with Dr. Clark "regarding [Dr. Stepps's] performance [not]withstanding the fact there was a complete lack of objective standards."[53] The Amended Complaint gives no other details about this event.

There is a similar dearth of facts surrounding Dr. Stepps's allegedly negative interactions with the (unidentified) attending physician(s) that occurred between April and September of 2017. Dr. Stepps alleges that an attending physician "criticized his performance" without providing any further "input."[54] But Dr. Stepps pleads no specific facts about the criticism, much less any facts that plausibly connect the criticism to Dr. Stepps's race. So too for Dr. Stepps's allegation that he was falsely accused of improperly altering a patient file in September of 2017. Dr. Stepps does not allege any facts to support the (implied) allegation that an unidentified attending physician falsely accused Dr. Stepps because of Dr. Stepps's race.

---

[53] *Id.* ¶ 12. This is the same disagreement that prompted Dr. Stepps to notify Dr. Schulz of his belief that he was being unlawfully discriminated against. *Id.* ¶ 13.

[54] *Id.* ¶ 17.

10

Dr. Stepps needs the Court to draw multiple implications from his vague, general allegations in order for this claim to survive the Motion to Dismiss. The implications that Dr. Stepps wants the Court to draw seem to be that (1) the attending physicians made negative assessments of Dr. Stepps's performance, (2) because their assessments were not based on objective standards, Dr. Stepps's race must have informed their criticism, and (3) the attending physicians' allegedly racist criticism contributed to Dr. Schulz's decision not to renew Dr. Stepps's contract. Without further factual details of the specific interactions and chain of events at issue, the logical leap required by the Amended Complaint is nothing more than speculation.

Just as importantly, the Amended Complaint fails to connect any racial discrimination allegations to Dr. Schulz personally. The non-conclusory factual allegations regarding Dr. Schulz are as follows: (1) Dr. Schulz is a white male; (2) Dr. Stepps complained to Dr. Schulz about Dr. Clark's alleged discrimination; and (3) Dr. Schulz informed Dr. Stepps that his contract would not be renewed. Without more, the allegation that Dr. Schulz terminated Dr. Stepps while acting "under the color of law, and with the intent to deprive the Plaintiff of his Civil Rights . . ." is wholly conclusory.[55] Therefore, Dr. Schulz is entitled to qualified immunity on the discrimination claim.

### B. Retaliation

Retaliation under § 1981 comprises the same elements as Title VII retaliation: (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered a materially adverse employment action; and (3) the materially adverse action was causally connected to plaintiff's protected activity.[56] Dr. Stepps's Amended Complaint clearly alleges protected activity (complaining of racial discrimination) and an adverse employment action (termination of an employment contract).

---

[55] *Id.* ¶ 39.

[56] *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013).

The causal connection between Dr. Stepps's filing a formal complaint and Dr. Schulz informing him that his contract would not be renewed is a closer question, mainly due to the ten-month gap between those two events.

In order to state a § 1981 retaliation claim, a complaint must allege but-for causation.[57] An allegation of but-for causation can be supported with circumstantial evidence, including the timing of the two events.[58] But temporal proximity cannot serve as the sole basis for but-for causation where the gap in time is so attenuated as to not meet the plausibility standard for surviving motions to dismiss.[59] Here, the ten-month gap in time between Dr. Stepps's reporting discrimination and his termination is long enough that more is needed to support a plausible inference of but-for causation.[60] And the Amended Complaint does not provide more.

The only facts that in any way support a retaliation claim against Dr. Schulz are (1) Dr. Stepps reported discrimination to Dr. Schulz in February of 2017, (2) Dr. Schulz, or someone on his behalf, told Dr. Stepps to file a complaint with the Civil Rights Office, (3) Dr. Schulz, or someone on his behalf, decided not to investigate Dr. Stepps's allegation, (4) Dr. Schulz, or someone on his behalf, sent Dr. Stepps to "counseling through EAP," and (5) Dr. Schulz informed Dr. Stepps that Dr. Stepps's contract would not be renewed in December of 2017.

Dr. Stepps again needs the Court to draw inferences upon inferences upon (more) inferences. It appears that Dr. Stepps wants the Court to read the Amended Complaint as plausibly

---

[57] *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017).

[58] *Id.* at 373.

[59] *Id.*

[60] *Williams v. United Parcel Serv.*, 963 F.3d 803, 808 (8th Cir. 2020) ("[W]ithout more, an 'interval of more than two months is too long to support an inference of causation.'") (quoting *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003)); *see also Wilson*, 850 F.3d at 373 (discussing cases from the Supreme Court, First Circuit, and Second Circuit that found intervals of two, three, four, and five months to be insufficient "to meet the plausibility standard for surviving motions to dismiss . . . .").

The causal connection between Dr. Stepps's filing a formal complaint and Dr. Schulz informing him that his contract would not be renewed is a closer question, mainly due to the ten-month gap between those two events.

In order to state a § 1981 retaliation claim, a complaint must allege but-for causation.[57] An allegation of but-for causation can be supported with circumstantial evidence, including the timing of the two events.[58] But temporal proximity cannot serve as the sole basis for but-for causation where the gap in time is so attenuated as to not meet the plausibility standard for surviving motions to dismiss.[59] Here, the ten-month gap in time between Dr. Stepps's reporting discrimination and his termination is long enough that more is needed to support a plausible inference of but-for causation.[60] And the Amended Complaint does not provide more.

The only facts that in any way support a retaliation claim against Dr. Schulz are (1) Dr. Stepps reported discrimination to Dr. Schulz in February of 2017, (2) Dr. Schulz, or someone on his behalf, told Dr. Stepps to file a complaint with the Civil Rights Office, (3) Dr. Schulz, or someone on his behalf, decided not to investigate Dr. Stepps's allegation, (4) Dr. Schulz, or someone on his behalf, sent Dr. Stepps to "counseling through EAP," and (5) Dr. Schulz informed Dr. Stepps that Dr. Stepps's contract would not be renewed in December of 2017.

Dr. Stepps again needs the Court to draw inferences upon inferences upon (more) inferences. It appears that Dr. Stepps wants the Court to read the Amended Complaint as plausibly

---

[57] *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 372 (8th Cir. 2017).

[58] *Id.* at 373.

[59] *Id.*

[60] *Williams v. United Parcel Serv.*, 963 F.3d 803, 808 (8th Cir. 2020) ("[W]ithout more, an 'interval of more than two months is too long to support an inference of causation.'") (quoting *Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003)); *see also Wilson*, 850 F.3d at 373 (discussing cases from the Supreme Court, First Circuit, and Second Circuit that found intervals of two, three, four, and five months to be insufficient "to meet the plausibility standard for surviving motions to dismiss . . . .").

alleging that Dr. Schulz's response to Dr. Stepps filing a formal complaint was to ignore Dr. Stepps's concerns and allow the attending physician(s) to continue criticizing Dr. Stepps, knowing that this omission would result in the development of a paper trail that would eventually justify Dr. Stepps's termination (i.e., remediation, the performance improvement plan, and suspension). There simply are not enough facts to allow the Court to draw such inferences without engaging in mere speculation. Dr. Schulz is entitled to qualified immunity on Dr. Stepps's retaliation claim.

## CONCLUSION

Dr. Stepps will have twenty-one days from the date of this Order to remedy the deficiencies in his Amended Complaint. If Dr. Stepps does not amend, the Amended Complaint will be dismissed without prejudice.

IT IS SO ORDERED this 6th day of September 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE